UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD JOHN BADER,

    Plaintiff,    Civil Action No. 11-15680
v.    HON. LAWRENCE P. ZATKOFF
    U.S. District Judge
    HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL    U.S. Magistrate Judge
SECURITY,

    Defendant.
    _____/

## REPORT AND RECOMMENDATION

Plaintiff Edward John Bader brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #16] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

## PROCEDURAL HISTORY

On February 27, 2008, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset of disability date of January 5, 2008 (Tr. 121-129). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 5, 2010 in Falls Church, Virginia (Tr. 43). Administrative Law Judge ("ALJ") Elliott Bunce presided. Plaintiff, represented by Mikel Lupisella, testified by teleconference (Tr. 47-55). Vocational expert ("VE"), Mary Williams also testified (Tr. 55-58). On July 1, 2010, ALJ Bunce determined that Plaintiff was not disabled (Tr. 22-23). On October 28, 2011, the

-1-

Appeals Council denied review of the claim (Tr. 1-3). Plaintiff filed for judicial review of the final decision on December 28, 2011.

## BACKGROUND FACTS

Plaintiff, born December 29, 1954, was 55 when the ALJ issued his decision (Tr. 23, 121). He completed high school and worked previously as a driver-clerk, janitor, and production worker (Tr. 143-148). In his application for benefits, he alleged disability as a result of multiple knee surgeries, elbow conditions, and hypertension (Tr. 142).

### A. Plaintiff's Testimony

Plaintiff reported that he lived with his wife in a single family home in Saginaw, Michigan (Tr. 48). He stated that he stood 5' 10" and weighed 210 pounds (Tr. 49). He indicated that he held a valid driver's license but that most of driving consisted of short, local trips (Tr. 49). He added that when he was taking a longer car trip, he would use cruise control or his wife would drive (Tr. 49).

Plaintiff testified that he last worked in December, 2007 (Tr. 49). He stated that his household chores were limited to helping his wife wash dishes (Tr. 49). He reported that he underwent left knee replacement surgery in February, 2008 and a second procedure on the right knee the following month (Tr. 50). Plaintiff alleged that he continued to experience pain in both knees, adding that knee problems also created back pain (Tr. 50). He stated that he coped with back pain by medication, chiropractic treatment and keeping his legs elevated when possible (Tr. 51). Plaintiff opined that he would be unable to perform any work that required lifting and carrying (Tr. 51). He alleged that he was unable to walk for more than one block or stand for more than 10 minutes (Tr. 51). He estimated that he could sit for up to 50 minutes, but needed to keep his legs moving to avoid discomfort (Tr. 52).

In response to questioning by his attorney, Plaintiff testified that the bulk of his

working years were spent performing assembly work at General Motors, but that he was later assigned a janitorial position requiring less standing and lifting (Tr. 53). He stated that he had since accepted a retirement buyout offer, after which he took a job as a driver for a portable dental office which required him to drive, leave the vehicle, enter a school building, accompany students to the vehicle, and review paperwork (Tr. 53-55). He opined that knee problems prevented him from returning to the driver position (Tr. 54).

### B.     Medical Evidence

#### 1. Treating Sources

A November, 2007 MRI found the absence of a disc herniation, but found disc space narrowing in the lumbar spine (Tr. 225). In February, 2008, Plaintiff underwent arthroscopy of the left knee (Tr. 231). Followup notes show good range of motion (Tr. 229, 302, 307, 328). March, 2008 physical therapy records state that "therapeutic goals were met" as to the left knee (Tr. 239). The same month, Plaintiff underwent a total arthroscopy of the right knee without complications (Tr. 300-301, 325-326). Post operative imaging studies of the right knee were unremarkable (Tr. 241). May, 2008 followup treatment notes state that Plaintiff demonstrated a good range of knee motion (Tr. 247, 290, 294). The following month, he sought emergency treatment for right knee pain (Tr. 295). In July, 2008, Plaintiff reported continuing right knee pain at level "five" on a scale of one to ten (Tr. 267). Treating notes by Michael D. Papenfuse, D.O. state that Plaintiff was currently taking Vicodin and Lyrica (Tr. 267). A physical examination was unremarkable with 5/5 strength in all extremities (Tr. 168-170). Tests for rheumatoid arthritis were negative (Tr. 291).

In July, August, and September, 2008, Plaintiff received epidural injections (Tr. 272-281). September, 2008 treating records state that his range of right knee motion was excellent, but that he reported nighttime discomfort and little help from steroid injections (Tr.

304, 331). Imaging studies of the right knee showed normal alignment (Tr. 335). In October, 2008, neurologist Surendra Kaul, M.D. observed that Plaintiff's right knee was fully functioning (Tr. 316). Dr. Kaul deemed Plaintiff's reported pain as "unusual," but opined that it could be attributable to neuralgic problems of the right peroneal nerve (Tr. 317, 332). November, 2008 nerve conduction studies showed denervation at L4-L5 (Tr. 315). Plaintiff demonstrated normal motor strength and gait (Tr. 315). The same month, Plaintiff reported that Miraplex was effective in treating restless leg syndrome (Tr. 334).

In July, 2009 neurologist Naman Salibi, M.D. examined Plaintiff, noting complaints of shooting right leg pains (Tr. 343). Plaintiff was unable to squat, but exhibited a normal gait (Tr. 345). Dr. Salibi reviewed an MRI from the previous month showing a wide annular tear at L4-L5 and a foraminal tear on the right at L5-S1 (Tr. 345).

### 2. Non-Treating Sources

July, 2007 examination notes related to job eligibility state that Plaintiff underwent elbow surgery in 2003 (Tr. 208). His blood pressure was recorded at 120 over 76 (Tr. 208). The physical examination was unremarkable for spine or extremity conditions (Tr. 209).

In May, 2008, a non-examining Physical Residual Functional Capacity Assessment performed on behalf of the SSA by Kami Lukusa found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for up to six hours in an eight-hour workday (with a sit/stand option); and push and pull without limitation in the upper extremities (Tr. 250). Plaintiff was restricted to frequent (as opposed to *constant*) pushing/pulling in the lower extremities (Tr. 250). His postural limitations consisted of a preclusion on all climbing of stairs, ramps, and scaffolds; occasional stair/ramp climbing, stooping, kneeling, crouching, and crawling; and frequent balancing (Tr. 251). Lukusa found that Plaintiff did not experience manipulative, visual, or communicative limitations but

should avoid fumes and hazards (Tr. 252-253).  Citing the medical records, she found Plaintiff's claims of limitation "largely credible" (Tr. 256).

### 3. Material Submitted After the ALJ's July 1, 2010 Opinion[1]

In September, 2009, Plaintiff sought emergency treatment for back pain (Tr. 349).  In May, 2010 Plaintiff sought treatment after injuring his back putting up a swimming pool (Tr. 350).  A CT of the lumbar spine showed the absence of a disc herniation, stenosis, or fractures (Tr. 351).  In June, 2010, Plaintiff again sought emergency treatment for back pain (Tr. 348).

### C. Vocational Expert

VE Mary Williams classified Plaintiff's former job as a production worker as exertionally medium and unskilled; janitor, light/unskilled; and driver-clerk job,

---

[1] The medical records contained in transcript pages 347 to 351were submitted for Appeals Council consideration on August 25, 2010, well after the July 1, 2010 administrative opinion was issued (Tr. 4, 196).  Where, as here, the Appeals Council denies a claimant's request for a review of an application based on new material (Tr. 1-3), the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 696-696 (6th Cir.1993).  Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Because Plaintiff does not rely on the later provided material in arguing for remand and has not provided good cause for the late submission of this evidence, it cannot be considered in deciding whether remand is appropriate.  Moreover, these records do not provide a basis for reconsideration of the ALJ's decision, even assuming that he had provided good cause for the tardy submission.

light/unskilled[2] (Tr. 57). She stated that this testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 58).

### D.     The ALJ's Decision

ALJ Bunce found that although Plaintiff experienced the severe impairments of "degenerative joint disease of the lumbar spine and knees," neither condition met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 18-19). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for a full range of exertionally light work (Tr. 19). The ALJ found that Plaintiff could perform his past relevant work as a "driver-clerk" (Tr. 22).

The ALJ discounted allegations of disability, noting that seven months after right knee surgery, Plaintiff exhibited an "excellent" range of motion and that imaging studies showed that the prosthesis was stable (Tr. 21). The ALJ cited Dr. Kaul's October, 2008 examination notes stating that Plaintiff had full strength in all extremities and was able to walk without problems (Tr. 21).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### A. The Step Four Finding

Plaintiff's first argument is hard to fathom. *Plaintiff's Brief,* 6-8, *Docket #11.* He seems to contend that the ALJ Step Four finding that he could return to his work as a driver-clerk (Tr. 22) was not supported by VE testimony. *Id.* While he is correct that the hypothetical question to the VE must include the claimant's relevant limitations, *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987), this argument is inapplicable here. First, the "vocational testimony" argument fails because the ALJ's Step Four determination that Plaintiff could perform his former job did not require the ALJ to elicit any job findings or other testimony from the VE. *See Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *Mays v. Barnhart,* 78 Fed. Appx. 808, 813–814 (3rd Cir.2003)("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ").

Plaintiff's related argument that the VE's job testimony did not comport with the information found in the DOT is also without merit. He cites two driver-clerk positions in the DOT that require either a greater skill or exertional level than Plaintiff's driver-clerk position. *Plaintiff's Brief* at 7. However, at Step Four of the sequential analysis, the Commissioner first considers whether the claimant has the RFC to perform the functional demands and duties of a past job *as actually performed by the claimant.* SSR 82–61. If so, the claimant is not disabled. If not, only then will the Commissioner be required to consider whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.* The question of

whether Plaintiff was able to perform his job as generally required in the national economy is mooted by his ability to return to the driver-clerk position *as performed*. The former work requirements, as described by Plaintiff himself, fit easily within the parameters of the RFC (Tr. 19).

### B. The Credibility Determination

Plaintiff also takes issue with the credibility determination, arguing in effect that the ALJ erred by discounting testimony and medical evidence supporting a disability finding. *Plaintiff's Brief* at 8-11. He contends that the ALJ's Step Two finding that he experienced degenerative joint disease of the lumbar spine and knees was inconsistent with the RFC determination that he could perform a full range of light work. *Id.*

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."

Despite a lengthy recitation of the procedural requirements of a credibility determination, Plaintiff does not appear to contend that the ALJ's analysis was procedurally deficient, but rather, that it was not supported by substantial evidence. *Plaintiff's Brief* at 10. Contrary to this argument, the ALJ's credibility findings were both well explained and well supported. The ALJ noted that while Plaintiff experienced significant exertional limitations

in the first few months following the athroscopic surgeries in February and March, 2008, examination reports and objective testing from July, 2008 forward did not support the professed limitations (Tr. 20-21). He also noted that while Plaintiff alleged continuing pain in July, 2008, imaging studies from this period were unremarkable (Tr. 20). The ALJ also cited examination notes from September and October, 2008 showing an excellent range of motion, a normal gait, and full motor strength (Tr. 21). The ALJ acknowledged later imaging studies showing tears at L3-L4 and L4-L5, but noted that in subsequent examinations, Plaintiff demonstrated full motor strength and a normal gait (Tr. 22). The Step Two finding that Plaintiff experienced degenerative joint disease did not prevent the ALJ from finding an RFC for a full range of light work.

In closing, it should be noted that the recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's limitations. However, because the ALJ's decision was well articulated and within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #16] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: January 10, 2013


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 11, 2013.

s/Johnetta M. Curry-Williams
Case Manager